1        HONORABLE JAMES L. ROBART

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
9                       AT SEATTLE

10   OLD REPUBLIC TITLE, LTD.,              No. 10-cv-0038-JLR

11            Plaintiff,                    **DECLARATION OF SCOTT A.
                                            SMITH IN OPPOSITION TO
12        v.                                MOTION TO QUASH DEPOSITION
                                            OF DIANE KELLEY**
13   TROY X. KELLEY and DIANE
     DUFFRIN KELLEY, individually and as    NOTE ON MOTION CALENDAR:
14   a marital community,                   August 27, 20103

15            Defendants.

16

17

18              **FILED UNDER SEAL**

19

20

21

22

23

24

25

26

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 1
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams p.s.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    I, Scott A. Smith, affirm:

2    1.    I am one of the attorneys for the plaintiff, Old Republic Title, Ltd.  I

3    am authorized to make this declaration on its behalf, and have personal

4    knowledge of and am competent to testify about the matters set forth in this

5    declaration.

6    2.    Much of the evidence in this lawsuit was designated as "Confidential"

7    by the Kelleys pursuant to a stipulated protective order (Dkt. 14).  Old Republic is

8    therefore filing a motion to seal the portions of its opposing brief and this

9    declaration that contain or refer to "confidential" information.  The attached exhibits

10   have also been redacted to black out the information listed in Local Rule 5.2(a).

11   Finally, the yellow highlighting in the attached exhibits was not in the original

12   document but was added by my office to identify the relevant testimony or

13   evidence pursuant to Local Rule 10(e)(10).  Other than these changes, the

14   exhibits are true and correct copies.

15                    **<u>Relationship Among the Kelleys' Companies</u>**

16   3.    Exhibit 1 is a true and correct copy of excerpts from the Kelleys'

17   supplemental discovery responses dated July 26, 2010.  In response to

18   Interrogatory No. 15, they state that they are the sole owners of Blackstone

19   International Inc., United National LLC (before it was cancelled), and Attorney

20   Trustee Services Inc.  Exhibit 2 is a true and correct copy of excerpts from the

21   Kelleys' supplemental discovery responses dated March 25, 2010.  It is referenced

22   below.

23   4.    The Kelleys state that The Post Closing Department ("PCD") was a

24   trade name of United National.  (Motion at 2)  Some documents were in PCD's

25

26

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 2
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  name and others were in United National's name (e.g., bank records and tax

2  returns).  See also Exhibit 6.  This declaration refers to them interchangeably.

3      5.      Exhibit 3 is a true and correct copy of the 2007 K-1 of Blackstone

4  International Inc. which states that it was the majority owner and managing

5  member of United National LLC.

6      6.      Exhibit 4 is a true and correct copy of the 2007 K-1 of Attorney

7  Trustee Services Inc., which identifies it as a member of United National.

8      7.      Exhibit 5 is a true and correct copy of corporate documents which

9  identify Berkeley United LLC as a Nevada company that the Kelleys formed on

10  June 23, 2008.  These were produced by Vanguard in response to a subpoena

11  duces tecum.  The Kelleys did not disclose the existence of Berkeley United in

12  response to discovery requests asking them to identify the companies they owned

13  or in which they were officers.  See their responses to Interrogatory Nos. 15 and

14  16 attached as Ex. 1 and 2.

15              **Diane Kelley's Role in These Companies**

16      8.      Exhibit 6 is a true and correct copy of a printout from United

17  National's web page which identifies Diane Kelley (using her maiden name Duffrin)

18  as a member of its Board of Directors.  The second page of this exhibit identifies

19  PCD as an affiliate of United National.

20      9.      Exhibit 7 is a true and correct copy of W-2s produced by PCD's

21  payroll company in response to a subpoena duces tecum.  These documents

22  identify Diane Kelley as an employee of United National LLC from 2003 to 2008.

23  We have redacted her SSN and the W-2s of other employees.  According to those

24  same payroll records, Diane Kelley was one of only two employees (other than

25  Troy Kelley) who worked for the company in each year of its five-year existence.

26

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 3
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  In addition, Troy Kelley testified that his wife is an employee of PCD.  (Ex. 21 at

2  294)

3          10.     Exhibit 8 is a true and correct copy of the initial formation papers of

4  Attorney Trustee Services, Inc. ("ATS").  These are public records that were filed

5  with and are available from the Washington Secretary of State.  The Application to

6  Form a Profit Corporation and the Initial Annual report identify Diane Duffrin as the

7  President, Registered Agent, and Incorporator of the company.  The company's

8  address is the Kelleys' home address.  The signatures are different and look

9  different:  two are by "Diane Kelley" and the third is by "Diane Duffrin" in a different

10 handwriting.  ATS is the company that provided reconveyance services in Oregon

11 after PCD was shut down.  (See ¶ 27 below.)

12         11.     Exhibit 9 is a true and correct copy of the first and signature pages of

13 an Organization Resolution of Blackstone International Inc. that was produced by

14 Vanguard in response to a subpoena duces tecum.  Diane Kelley signed the

15 document as the V.P. and Secretary of Blackstone International Inc.  The address

16 and phone numbers given for Blackstone International are the same as the

17 Kelleys' home address and phone numbers.

18         12.     Exhibit 10 is a true and correct copy of the first and signature pages

19 of an Organization Resolution of Berkeley United LLC that was produced by

20 Vanguard in response to a subpoena duces tecum.  Diane Kelley signed the

21 document as the Vice President of Berkeley United LLC.  The address and phone

22 numbers given for Berkeley United LLC are the same as the Kelleys' home

23 address and phone numbers.

24

25

26

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

**The Reconveyance Services Agreement with PCD**

13.     Exhibit 11 is a true and correct copy of the Agreement between Old Republic and PCD to provide reconveyance services.  It had a starting date of June 1, 2006.

14.     As reflected in numerous exhibits, the fee that Old Republic collected from each escrow customer was $140 at the beginning of the agreement with PCD and increased to $150 when recording fees increased in December 2007.

15.     Exhibit 12 is a true and correct copy of an exchange of emails between PCD and ORT on March 26, 2007, in which PCD's Vice President and Operations Manager, Jason JeRue, confirms, "The fee is $20 flat for each item (each DOT to be tracked)."  (Although marked "confidential" by Old Republic, the emails are not confidential and Old Republic withdraws the designation.)

16.     Exhibit 13 is a true and correct copy of an email from Troy Kelley to Old Republic enclosing an example of a refund letter that PCD would use when making refunds to Old Republic's customers of any excess reconveyance fees.

17.     Exhibit 14 is a true and correct copy of another agreement that Troy Kelley produced in discovery, this one with Fidelity Title to provide reconveyance services in Washington starting October 13, 2003.  As with the agreement with Old Republic, PCD was paid a nominal fee and agreed to refund excess fees directly to Fidelity Title escrow customers.  See also Exhibit 23.

18.     In response to Interrogatory No. 17, the Kelleys stated that PCD stopped providing reconveyance services in Washington in June 2008.  (Exhibit 2)

**Kelley Misappropriated the Refund Money**

19.     Exhibit 15 is a true and correct copy of Old Republic's revised answer to Interrogatory No. 6 in which Old Republic provides a calculation of the

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 5
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  total refund money that Kelley misappropriated.  The figures that are based on

2  PCD's bank records have been redacted.

3  　　　　20.　　The refund money that Kelley misappropriated from his two other

4  major clients, Fidelity Title and Stewart Title, is reflected in the sweep (or

5  "reserve") accounts.  Exhibit 16 is a true and correct copy of the June 2008 bank

6  statements for the two sweep accounts associated with the bank accounts that

7  PCD used for these two customers.  In simple terms, it is Old Republic's

8  contention that the money that built up over time in the sweep accounts was

9  excess money that should have been refunded.  After all, if the money was not

10  needed to pay the trustee or recording fees, then it was supposed to go back to

11  the customer.  These bank statements were produced by Columbia Bank in

12  response to a subpoena duces tecum.  The wire transfer of the misappropriated

13  funds out of state to the Kelleys' other entities is detailed below.

14  　　　　　　　**Kelley Was Aware of the Class Action Lawsuits**

15  　　　　21.　　On May 14, 2008, the Hagens Berman firm filed three class action

16  lawsuits, one each against Old Republic, Fidelity Title, and First American Title.

17  *McFerrin v. Old Republic Title,* U.S. District Court, W.D. Washington, No. CV08-

18  5309-BHS, *Frank Cornelius v. Fidelity National Title Co.,* U.S. District Court, W.D.

19  Washington, No. 08-754-MJP, and *Jankanish v. First American Title Co.*, U.S.

20  District Court, W.D. Washington, No. 08-01147-MJP.  The lawsuits alleged, among

21  other things, that these escrow companies failed to make refunds to their

22  customers of excess reconveyance fees.  The filing of the lawsuits was reported in

23  Seattle's two daily local newspapers within one day.

24  　　　　22.　　Exhibit 17 is a true and correct copy of an email that Amy Cobine

25  says she sent to Troy Kelley on May 19, 2008, about the recently filed class action

26

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 6
4845-9700-0967.02
082510/1726/62131.00047

1  lawsuits against two of PCD's reconveyance customers, Old Republic and Fidelity

2  Title.

3      23.    Exhibit 18 is a true and correct copy of a letter from PCD to Frank

4  Cornelius dated May 15, 2008, enclosing a refund check that was due months

5  earlier.  (While the cover letter is dated May 15, the check is dated May 16.)  Mr.

6  Cornelius was the lead plaintiff in the lawsuit mentioned above who alleged he

7  never got a refund check.  The letter was produced in discovery in the *Cornelius*

8  case.

9                          **Kelley Shuts Down PCD**

10     24.    PCD was profitable.  Exhibit 19 is a true and correct copy of its tax

11  return for 2007, with the Employer Identification Number redacted,  This was

12  PCD's last full year of business.  This document was produced by Kelley in

13  discovery.  Even though PCD never included the misappropriated funds as income

14  (see Troy Kelley Deposition, Ex. 21 at 188-89), it reported net income of

15  $285,926.77 in 2007.  (Ex. 19)  The money that the Kelleys made from their

16  reconveyance business was their largest source of income.  Exhibit 20 is a true

17  and correct copy of their 2007 tax return with the Kelleys' social security numbers

18  and the names of their children redacted.  Diane Kelley co-signed the return.

19     25.    Exhibit 21 is a true and correct copy of the excerpts from Troy

20  Kelley's deposition cited in this declaration.

21     26.    Exhibit 22 is a true and correct copy of a page of the payroll records

22  that PCD's payroll service company produced in response to a subpoena duces

23  tecum.  The records contain a page each time the employees are paid.  It lists

24  their name and the amount they are paid.  Ex. 22 is the last such record and is

25  dated June 25, 2008.  That is the date they are paid, not the last day they worked.

26

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 7
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

27.    Exhibit 23 is a true and correct copy of the agreement that Fidelity Title in Oregon entered into with Attorney Trustee Services Inc., the company that Diane Kelley formed and was the President of (see ¶ 10 and Ex. 8 above).  Under this agreement, effective July 3, 2008, Attorney Trustee Services Inc. continued doing the reconveyance work that PCD had been doing for Fidelity Title in Oregon. As with the previous PCD contracts, ATS was paid a nominal fee for its services. Kelley produced this agreement in discovery.

28.    Exhibit 24 is a true and correct copy of a document produced by Kelley in discovery.  It is his August 1, 2008, request to the Secretary of State to cancel United National LLC as a Washington company.

### The Transfer of the Misappropriated Funds

29.    Exhibit 25 is a true and correct copy of the June 2008 monthly statements for the business bank accounts that PCD used to conduct the reconveyance business of Old Republic, Stewart Title, and Fidelity Title.  These statements were produced by Columbia Bank in response to a subpoena duces tecum.  PCD set up a separate checking account for each of his reconveyance customers.  (See Kelley testimony, Ex. 21 at 37, and Ex. 2, response to Interrogatory No. 18)  There was also a "Reserve" or "Sweep" account into which the daily balances in excess of set amounts (e.g., $10,000) were swept at the end of each banking day.  These June 2008 monthly statements show the transfer into these account of the money that had built up over time in the linked "Reserve" accounts.  (See ¶ 20 and Ex. 16 above.)  These statements also show the almost immediate wire transfer of this money out of these accounts.

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 8
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

30.     As reflected in Exhibit 16, the total of the funds moved out of the sweep accounts and then wired into a series of new accounts was nearly $3.8 million.

31.     The first three wire transfers of the $3.8 million was from the Columbia Bank accounts into one new Wells Fargo account.  Exhibit 26 is a true and correct copy of the June 2008 statement which shows that it was opened on June 11 in the name of United National, that three separate wire transfers (from the Columbia bank accounts) totaling $3,782,226.31 came in on June 12 and was wired out on June 13.  This statement was produced by Wells Fargo in response to a subpoena duces tecum.

32.     The fourth wire transfer was on June 13, from the Wells Fargo account into a new US Bank account.  Exhibit 27 is a true and correct copy of the June 2008 monthly statement which shows it was opened on June 12 in the name of United National, that it received a $3,785,667.15 wire transfer on June 13, and that the funds were wired out on June 18.  This statement was produced by US Bank in response to a subpoena duces tecum.

33.     The fifth wire transfer was on June 18, from the US Bank account into a new Nevada State Bank account.  Exhibit 28 is a true and correct copy of the June 2008 monthly statement which shows that it was opened on June 18 in the name of Blackstone International Inc., that it received a  $3,784,618.51 wire transfer on June 18, and that the funds were wired out on June 23 and 27.  This statement was produced by Nevada State Bank in response to a subpoena duces tecum.

34.     The sixth wire transfer was on June 23 from the Nevada State Bank account into a new Vanguard account.  Exhibit 29 is a true and correct copy of the 2008 year end statement for this account that shows it was opened in the name of

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 9
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1 Blackstone International Inc. on June 20, and that it received an incoming wire

2 transfer on June 23 in the amount of $149,870.  This statement was produced by

3 Vanguard in response to a subpoena duces tecum.

4        35.    The seventh and final wire transfer did not take place until June 27,

5 2008.  In the interim, the Kelleys formed a new company, Berkeley United LLC.

6 See ¶ 7 and Ex. 5 above.

7        36.    On June 30, 2008, $3,634,673.51 was wired from Blackstone

8 International's account at the Nevada State Bank into a newly opened account at

9 Vanguard in the name of Berkeley United LLC.  This information is in Exhibit 30, a

10 true and correct copy of the year end statement of this account produced by

11 Vanguard in response to a subpoena duces tecum.

12        37.    As noted in paragraphs 11-12 and Ex. 9-10 above, Diane Kelley

13 signed documents to open these new Vanguard accounts.

14        38.    Exhibit 31 is a true and correct copy of an International Wire Option

15 Form that Vanguard produced in response to a subpoena duces tecum.  In it,

16 Kelley set up the ability to wire the funds in Berkeley United's Vanguard account

17 (no. 88028148746) to an account in Belize opened in the name of Wellington

18 Trust.  Wellington Trust is another entity that the Kelleys did not disclose in

19 discovery.  (See Ex. 1, 2, the Kelleys' responses to Interrogatory Nos. 15, 16)  Its

20 address is the Kelleys' home.

21        39.    Exhibit 32 is a true and correct copy of the June 2008 monthly

22 statement of PCD's general business banking account along with the six checks

23 that Troy Kelley wrote to himself between June 12 and July 25 in the total amount

24 of $155,553.04.  These are attached as these records were produced by Columbia

25 Bank in response to a subpoena duces tecum.

26

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 10
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

40.     When asked about the movement of funds, the formation of a new company to hold the money, and the opening of an offshore account, Troy Kelley testified that he did all this upon the advice of attorney Alan Eber.  (Ex. 21 at 152-55, 185, 192-94).  Kelley said he did it for estate planning purposes but acknowledged that Mr. Eber specializes in "asset protection."  (Id. at 222)  Mr. Eber's web sites are www.AssetProtectionLaw.com and www.OffshoreProtectionTrust.com.  The later site includes the statement, "We will keep your assets out of the reach of judgments, creditors, business conflicts and divorcing spouses."  http://www.OffshoreProtectionTrust.com/legal-services.php

## Kelley Claims All His Business Records Were Destroyed in a Fire

41.     Exhibit 33 are true and correct copies of a subpoena duces tecum served on Kelley in the *Cornelius v. Fidelity Title* class action along with several letters from Kelley's lawyers in which they repeatedly represent that a fire in the Stewart Title building in Everett on June 25, 2008, destroyed Kelley's business records, including his bank account records.

42.     The Kelleys repeat these claims in response to Old Republic's discovery requests.  (Ex. 2)  In response to Interrogatory No. 10, the Kelleys say they cannot answer the interrogatory because "all PCD records, and computers, that contain the requested information were destroyed in a fire at PCD's offices at Stewart Title Co., in Everett, Washington on June 25, 2008.  Therefore, the Kelleys have no access to information that would answer this request."  (Ex. 2)  In response to Interrogatory No. 12, they repeat that the Stewart Title building was PCD's primary office and that their records were destroyed in a fire destroyed that building.   When asked in Interrogatory No. 17 why PCD was closed, the Kelleys repeat that "the June 2008 fire destroyed PCD's records."

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 11
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

43.     Kelley did not provide clear testimony about his whereabouts at the time of the fire and said he wasn't sure if he was on vacation as he had told people at the time.  (Ex. 21 at 143-44, 171-73)

### Kelley Admits the Fire Did Not Destroy His Records

44.     When deposed, Troy Kelley repeated his previous claim that he lost his business records in the fire (Ex. 21 at 73) before admitting (a) his office in Everett was in the building next door to the Stewart Title building that was burned down (Ex. 21 at 69, 70-71), (b) the office they used next door was not damaged in the fire (pages 139, 144-45), and (c) all his records were not destroyed in the fire (pages 77, 80, 180).

45.     Kelley testified that the computer he used in his home office stopped working, was cleaned and given to a charity.  (Id. at 43-45)  He also says that when he shut down his website, he did not save any emails or any of the reconveyance spreadsheets that he had posted on line for his customers to access.  (Id. at 109-110)

### Kelley Admits He Decided to Shut Down PCD Before the Fire

46.     In his deposition, Kelley admitted he decided to close PCD before the fire.  (Ex. 21 at 110-111)

47.     As noted in paragraph 26, Ex. 22 above, by the time of the June 25 fire the PCD employees had been terminated.  Their last paycheck was dated June 25.

### Commingling of Business and Non-Business Expenses

48.     Exhibit 34 are true and correct copies of a small subset of the checks that were produced by Columbia Bank in response to a subpoena duces tecum, together with one page from the Kelleys' 2006 tax return.  These checks were

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 12
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

written from the business banking accounts of PCD.  The payees include the YMCA (for day care), Dana's Housekeeping, Irma Guzman (the Kelleys' housekeeper), Arcadia (their son's school), the Johns Hopkins University Press (for a publication subscription), ASECS (the American Society for Eighteenth-Century Studies[1]), and David Duffrin (Diane Kelley's brother).

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Executed on August 25, 2010, in Seattle, Washington.

/s/ Scott A. Smith
Scott A. Smith

---

[1] Diane Kelley is an associate professor and chair in the Dept. of Foreign Languages and Literature at the University of Puget Sound.  (D. Kelley Decl., ¶ 9)

SMITH DECLARATION IN OPPOSITION TO MOTION TO QUASH
DEPOSITION OF DIANE KELLEY (No. 10-cv-0038-JLR) - 13
4845-9700-0967.02
082510/1726/62131.00047

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600