Hon. Judge James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLD REPUBLIC TITLE, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> TROY X. KELLEY and DIANE DUFFRIN KELLEY, individually and as a marital community, <br><br> Defendants. | No. 2:10-cv-00038-JLR <br><br> **DECLARATION OF TROY X. KELLEY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** <br><br> **NOTE ON MOTION CALENDAR: February 18, 2011** |

Troy X. Kelley deposes and states:

1. I am one of the defendants in this case, and I have been working in the title insurance industry since 1984. I make this declaration based on personal knowledge about which I am competent to testify.

2. I was the President of United National, LLC, a Washington LLC that did business under the name Post Closing Department ("PCD"). United National was cancelled pursuant to Washington law in August 2008. Among other things, PCD was in the business of providing "reconveyance services," which are tracking and other services associated with making sure that after a loan secured by real property is paid off the title to the property is appropriately cleared. In Washington, this means that the trustee holding the Deed of Trust securing the loan reconveys the property to the borrower and the Deed of Reconveyance is recorded with the appropriate

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 1
No. 2:10-cv-00038-JLR

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

county officials. This process is critical, because if the Deed of Reconveyance is not executed and recorded, then the prior loan and Deed of Trust may incorrectly appear as a cloud on title.

3. Some title and escrow companies handle their reconveyance tracking and processing function "in house," that is, their own internal employees do the work, perhaps as part of the upfront escrow fee paid by the customer and perhaps as a separate charge. PCD offered title and escrow companies a way to "outsource" this function. Generally speaking, the title or escrow company handling the closing would include a line-item charge on the HUD-1 statement for closing reflecting a fee to PCD, would collect that fee from the borrower on the loan (or other party), and then send it to PCD for tracking and processing the reconveyance.

4. At least in the initial stage, PCD did not deal with the escrow customers.

5. PCD's typical clients were large institutional companies in Washington and Oregon who have been in the industry for many years and who occupy a large portion of the title insurance and escrow markets, including Fidelity National Title, First American Title, Stewart Title, and Old Republic Title. However, PCD did from time to time do work for smaller escrow companies.

6. I have reviewed Old Republic's Motion for Partial Summary Judgment and understand that Old Republic claims that the agreement between it and PCD set forth a flat $20 fee for each reconveyance PCD handled for Old Republic, regardless of the level of services provided by PCD. Old Republic's claim is not correct, and is not an accurate statement of our understanding at the time the agreement was executed or later on.

7. The written contract set forth a fee of $20 for "tracking" reconveyances. But PCD agreed to do more than simply "track" reconveyances. It also agreed to prepare reconveyance documents and ultimately obtain the reconveyance. On a day-to-day basis, obtaining a reconveyance required PCD employees to pick up reconveyance files from the escrow company, write checks for document recordings and trustee fees, track documents, enter

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 2
No. 2:10-cv-00038-JLR

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

data concerning the closing, escrow and title files, prepare reconveyance documents, contact the borrower to obtain signatures, review post closing documents for accuracy and completeness, correct documents when necessary, place phone calls and follow up with lenders and trustees to facilitate reconveyance recording, record the reconveyance, search county records, contact county clerks, monitor loan payoff, prepare substitute of trustee documentation, and obtain letters of lost note if necessary and appropriate and indemnify third parties in those instances. PCD charged fees for these additional services, such as for preparing lost note documentation or sending additional faxes, and these charges were reflected on the spreadsheets that PCD sent to Old Republic and posted on the portion of PCD's website that was accessible to Old Republic reporting on PCD's reconveyance activities.

8. Sometimes, the post closing reconveyance process was easy and quick. More often, the tasks involved in ensuring that reconveyance activity was completed were laborious and time-consuming. Under the parties' contract, PCD was responsible for doing whatever it took to get the reconveyance completed, except for litigation. Given what it would sometimes cost to obtain a completed reconveyance, PCD would not have agreed to charge only $20 per reconveyance for all of that – nor do I think it would be reasonable for Old Republic to have expected PCD to do so.

9. Old Republic knew that that the $20 fee was not exclusive during the negotiation of the contract. My original draft of the contract specified that PCD would "receive, track, and prepare" reconveyance and satisfaction of mortgage documents as necessary, but it specified a $20 fee for "tracking" reconveyances. Unless Old Republic expected that PCD was going to perform the other services for free, it must have known that there would be other fees that were in fact charged to borrowers on each HUD-1.

10. This was confirmed by Old Republic's changes to my documents. In addition to tracking and preparing reconveyance documents, Old Republic proposed and PCD accepted that

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 3
No. 2:10-cv-00038-JLR

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

PCD also "obtain" the reconveyances and that we would work with lenders and trustees as necessary to make that happen. Essentially, Old Republic was putting additional burdens on PCD to make sure that all steps in the reconveyance process were completed beyond merely tracking whether the reconveyance had been completed. Unless Old Republic expected that PCD was going to perform these additional services for free, which I find unlikely and unreasonable, it must have known there would be other fees.

11. This was industry practice at the time. Title and escrow companies charged their customers a single, flat "reconveyance fee" on their HUD-1s. This fee was retained in-house or sent to a third-party reconveyance service provider. $20 was a sufficient, initial "tracking" fee, but it would not a sufficient fee to cover all possible eventualities to complete a reconveyance, and the industry therefore understood that there would be additional fees. I understood this as President of PCD, and Old Republic as one of the largest companies in this industry would have understood it as well.

12. I understand that Carl Lago is now taking the position that he and I had a meeting in April 2006 at which these issues were discussed, based on his notes. I recall this meeting, and I did not agree at the meeting that PCD's fees would be limited to $20 no matter what. I see that Mr. Lago doesn't in fact say that I agreed to anything different in his sworn declaration. All he does is swear to his notes, and his notes don't even say that I agreed to completely limit PCD's fees.

13. At all times during the contract period (2006-2008), where PCD performed these services, additional charges were incurred. Old Republic never objected to this practice during the life of the contract, even though from the reports we provided they certainly were aware of it. Our general practice was to post logs to our website that reported our reconveyance activities and the fees charged. These reports, which I prepared for posting, indicated that PCD was charging

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 4
No. 2:10-cv-00038-JLR

**G**RAHAM **& D**UNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

these additional fees. Old Republic never objected. Unfortunately, because the website was shutdown after PCD ceased doing business, the posted documents are no longer available.

14. I understand that Old Republic claims that they did not in fact have access to the website. I heard no such complaint during the life of our contract. Any time Old Republic raised any technical issues with the website our technology employee (Jason Jerue) promptly fixed the problem. I never heard anyone at Old Republic say at the time that Jason did not in fact fix any problems they were experiencing. I can't believe that they had no access at all for two years and never complained.

15. I understand that Mr. Lago has testified that the PCD-Old Republic agreement was never revised or amended. I agree that the contract was not amended to allow PCD to charge additional fees because the agreement didn't prevent us from charging those fees in the first place. However, if the contract is initially interpreted to mean that PCD couldn't include additional charges, then it was amended by our conduct and Old Republic's acceptance to include those additional charges.

16. I understand that Old Republic has pointed to the deposition testimony of two PCD employees (Amber Murray and Dee Lamb) as evidence that PCD agreed to charge only $20 per reconveyance. Old Republic has misconstrued their testimony.

17. Amber worked on the Old Republic conveyances, and Dee worked on the Fidelity reconveyances. However, their work was entirely limited to tracking and processing reconveyances, such as checking county recording websites, calling lenders for documents, etc. They did not negotiate PCD's contracts with either Old Republic or Fidelity. They did not deal with Old Republic or Fidelity personnel with respect to fee or billing issues. They did not handle PCD's finances. They did not post reporting logs to the website. And they would have had no idea what was billed to Old Republic or Fidelity by PCD at the end of the day. Nor do I believe that they testified they did know any of these things.

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 5
No. 2:10-cv-00038-JLR

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

18. The reason Amber and Dee were primarily aware of the tracking fee is because that was the original fee entered onto our tracking spreadsheet. That spreadsheet had a column for the tracking fee, which was the same for each transaction (although it varied by client), and it had additional columns for other fees as well, which might vary. They could very well state that the tracking fee was a flat amount that never varied, because in fact it was.

19. I do not believe that either Amber or Dee actually testified that there could be no other fees in any circumstances. However, if they did their understanding of PCD's contracts with Old Republic and Fidelity was simply mistaken, which is not surprising because they were not the personnel negotiating those contracts or dealing with billing issues.

20. During this time, Amber was a full-time college student working part-time at PCD to earn money for school, making perhaps $12.50/hr. Meaning no disrespect to Amber, but it is stunning to me that Old Republic apparently thinks I would have had Amber responsible for billing on an account of this magnitude.

21. I understand that Old Republic has proffered an email from Jason Jerue in 2007 that referenced a $20 fee, which is attached to the Frets Declaration. As with Amber and Dee, Jason was not responsible for negotiating PCD's contracts. Anyway, Jason's email refers to the "$20 flat" as the fee for "each DOT to be tracked." He does not say that $20 is the only possible fee, just that is the fee for tracking. Nor would he have authority to negotiate the fee.

22. I understand Old Republic has also offered a copy of one of PCD's advertising brochures, attached to the Smith Declaration, as evidence that our fee could only be $15. This brochure obviously doesn't state PCD's contract with Old Republic. For one thing, the tracking fee in our contract is $20, not $15. Moreover, the fee in the brochure is $15 for "tracking and processing," while the fee in our written contract is $20 only for "tracking." I made this change because I had tried doing the work for a flat $15 for smaller clients, and I discovered that it was not a workable business model. Therefore I separated tracking, which could be done for $15 or

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 6
No. 2:10-cv-00038-JLR

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

$20, from other processing activities, which could be substantially more time consuming and costly. Other than an early highly visible client where PCD lost money, and a client who I dropped after getting the account as quickly as I could, PCD never charged only a small tracking fee. As is shown in all of the title company client in Washington, additional fees were charged by PCD directly from the HUD-1 line charges. And as evidenced in all of the title company clients in Oregon, additional fees were charged by PCD to the title companies who in turn paid those fees from their reconveyance accounts that were funded solely from the HUD-1 line charges.

23. I understand that Old Republic has also submitted a copy of an email I wrote to Carl Lago in April 2006 that attached a copy of a "refund letter" for use in refunding money to customers. Carl Lago specifically asked for a copy of a "refund letter" for his file that would be available to show his regulator (insurance commissioner) or home office if he was ever asked for one. The email is not specifically referenced in Old Republic's motion, so I assume this is some sort of attempt to sandbag me. This refund letter was a sample of something that we could use in case a refund was necessary, such as when a mistake was made in transmitting the money or if we learned that the reconveyance was handled before we got started (such as by the original lender). Even this draft letter, however, shows my understanding – communicated to Old Republic – of the difference between merely "tracking" a reconveyance and fully processing it.

24. Old Republic makes a number of claims about my position and my deposition in its motion. These are meritless mischaracterizations.

25. Old Republic says that I "admit[] there is nothing in writing to support [my] position." I have not admitted that. Above I describe the language in the contract that supports my position. All I said in the passage in my deposition (Kelley 240:1-9) was that I couldn't point to specific language in the written contract that expressly listed the items to be charged and how much.

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 7
No. 2:10-cv-00038-JLR

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

26. Old Republic also claims that I "admit[] that [my] claim to be able to charge more than $20 is not based on any discussion or agreement with Old Republic." This is false, and Old Republic provides no citation to any portion of my deposition for it. I do claim that PCD's ability to charge for services beyond the $20 tracking fee is based on discussions with Old Republic, and was part of PCD's agreement with Old Republic.

27. Old Republic claims that I "speculated" that Carl Lago must have had an "implicit understanding" about the other fees chargeable by PCD. This is false and an obvious mischaracterization of my testimony designed to mislead the Court. The relevant passage of my deposition states:

> Q: Did you have any discussion with Carl that, Oh, by the way, if I have to write a letter or make a phone call, there's going to be an extra service charge for that?
>
> A: I did mention other service charges, but no, I did not mention any specifics of writing a letter or making the phone call.
>
> Q: Then how would Carl or Old Republic have known that you're going to charge an extra fee for writing a letter or making a phone call?
>
> A: Again, I have to speculate. But Carl has been at every land title association meeting when those things are discussed, when they set the prices there. They get together and set the prices industry wide. I'm not commenting on whether that practice is legal or not, but that's what happens.

So what I said was that I had mentioned "other service charges" for reconveyance services to Mr. Lago, but not specifically letter writing or phone calls, and I would have to speculate whether he understood "other service charges" to include those specific items. But Old Republic asserts that the fees weren't discussed at all, and insinuates that I would have to "speculate" about Old Republic's understanding about any of them – ignoring the fact that I had just testified that I had mentioned "other service charges."

28. I believe that Old Republic is only now claiming that we were limited to $20 because of the class action litigation and Carl Lago's personal animosity toward me. After the

DECLARATION OF TROY X. KELLEY IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT -- 8
No. 2:10-cv-00038-JLR

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

original class action suit was filed, Lago told me that he would drag my name through the mud and "cost me as much money as he can in litigation."

29. PCD conducted business for its other major clients, including Fidelity National Title and Stewart, in this manner—a base fee for tracking the reconveyance and additional fees for additional tasks necessary to complete the reconveyance—and acquiesced in this fee structure for many years. Neither has raised any complaints about PCD's business practices, nor have they sued PCD as Old Republic has done.

*I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct.*

SIGNED this 11th day of February, 2011, at _____, Washington.

_____
Troy X. Kelley

DECLARATION OF TROY X. KELLEY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 9
No. 2:10-cv-00038-JLR

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

# CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

  Scott A. Smith  ssmith@riddellwilliams.com

  William P. Brewer  wbrewer@riddellwilliams.com

DATED this 11th day of February, 2011.

        GRAHAM & DUNN PC


        By  /s/Darlyne De Mars
         Legal Assistant
         Judith A. Endejan, WSBA# 11016
         David C. Lundsgaard, WSBA # 25448
         Pier 70 ~2801 Alaskan Way, Ste. 300
         Seattle, WA  98121-1128
         Tel:  (206) 624-8300
         Fax:  (206) 340-9599
         Email:  jendejan@grahamdunn.com
         dlundsgaard@grahamdunn.com
         Attorneys for Defendants, Troy X. Kelley
         and Diane Duffrin Kelley

DECLARATION OF TROY X. KELLEY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT -- 10
No. 2:10-cv-00038-JLR

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599