Judge James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLD REPUBLIC TITLE, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> TROY X. KELLEY and DIANE DUFFRIN KELLEY, individually and as a marital community, <br><br> Defendants. | No. 2:10-cv-00038-JLR <br><br> KELLEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> **Note on Motion Calendar:  April 1, 2011** <br><br> **ORAL ARGUMENT REQUESTED** |

Defendants Troy X. and Diane Duffrin Kelley ("Kelleys") hereby move to dismiss Old Republic Title, Ltd.'s complaint against them pursuant to Fed. R. Civ. P. 56.

### I. INTRODUCTION

All of Old Republic's claims should be dismissed. As discussed below, each of the substantive claims (breach of contract, Consumer Protection Act ("CPA"), and unjust enrichment) suffer from one or more fatal evidentiary and/or legal defects. And once the substantive claims fail, the procedural claims that Old Republic alleges to pursue collection on its claims (piercing the corporate veil, improper winding up, and fraudulent transfer) necessarily disappear. Moreover, the piercing claim is independently invalid because Old Republic has no

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

evidence that the Kelleys or their limited liability company, United National, LLC, deceived Old Republic as to the nature of the corporate entity with which Old Republic was doing business.

## II. BACKGROUND

The underlying facts have already been described in some detail in the briefing on Old Republic's motion for partial summary judgment [Dkt. Nos. 71, 84], and in the interest of avoiding waste of the Court's time, the Kelleys will refrain from repeating them all again here. The Kelleys will focus primarily on key facts relevant to this motion.

### A.   Reconveyances Generally

Old Republic is a title company that provides escrow services for residential real estate transactions.  (*See* First Amended Complaint ("FAC") ¶ 6.)  In real estate transactions involving a deed of trust, as is common in Washington, the trustee holding the deed returns title to the borrower once the obligation secured by the deed is repaid through a process called a "reconveyance."  (FAC ¶ 7.)

Although simple in theory, a reconveyance involves a number of steps that vary in difficulty and amount of time to complete.  (*See* Decl. of Troy X. Kelley in Opposition to [Old Republic's] Motion for Summary Judgment ¶¶ 7-8 [Dkt. No. 85] ("Kelley Decl.").[1])  As Old Republic itself explained in its motion for summary judgment in the *McFerrin* class action before Judge Settle, "the process of completing a reconveyance is simple only in theory and can be – and frequently is – slow and complicated in reality."  (Mot. for Partial Summ. J. at 5 [Dkt. No. 55], *McFerrin v. Old Republic Title,* No. C08-5309-BHS (W.D. Wash.).)

"Reconveyance services" are the services associated with making sure the reconveyance actually happens and that title is appropriately cleared.  (Kelley Decl. ¶ 2.)  The performance of

---

[1] In the interest of not unnecessarily duplicating documents in the Court file, the Kelleys will cite to material filed in connection with other motions, in particular Old Republic's Motion for Partial Summary Judgment.  New material cited in this motion is attached to the Declaration of David C. Lundsgaard in Support of the Kelley Defendants' Motion for Summary Judgment ("Lundsgaard Decl.").

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

these services is critical to borrowers, because if title is not properly cleared, then the prior loan and deed of trust may incorrectly appear as a cloud on title in future transactions. (*Id.*)

**B.   Old Republic Initially Outsourced Its Reconveyance Services to RSI**

In the early 2000s, Old Republic made the decision to outsource its reconveyance services and retained a company called Reconveyance Services, Inc. ("RSI") to perform them. (*See* RSI Service Agreement, Exh. B to Decl. of Judith A. Endejan in Opposition to [Old Republic's] Motion for Summary Judgment [Dkt. No. 87] ("Endejan Decl.").)  In Old Republic's view, outsourcing the reconveyance servicing "would enable our reconveyances to be done in a timely manner and make economic sense."  (April 3, 2002 Email from Bill Broekhof to Carl Lago, Exh. A to Lundsgaard Decl.)

Prior to entering into the RSI contract, Old Republic was informed that RSI was not providing "refunds" of "extra monies" to escrow customers.  Janet Summers, Old Republic's quality assurance manager, sent an email to Carl Lago, Old Republic's Senior Vice President, and others stating that "[Helen Papke] did tell me that Reconveyance Services no longer refunds any extra fees . . . ."  (April 15, 2002 Email from Janet Summers to Carl Lago, et al., Exh. C to Endejan Decl.)  This information did not trouble Mr. Lago, (Lago Depo. at 93:11-13, Exh. D to Endejan Decl.), and Old Republic entered into the RSI contract in June 2002.

Then, in 2004, Mr. Lago received an email from another Old Republic employee (Lynn Levendowski) reporting again information that RSI was not providing "refunds." (Dec. 15, 2004 Email, Exh. E to Endejan Decl.)  Mr. Lago testified that upon subsequent investigation he learned that this rumor was true. (Lago Depo. 113-12-16; 156:21-157:1, Exh. F to Endejan Decl.)  This still did not trouble Old Republic.  It subsequently terminated RSI's services for "processing issues," but not for its refund handling practices.  (Lago Depo. 155:4-9, 156:5-10, Exh. G to Endejan Decl.)

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Old Republic's lack of interest or concern with respect to RSI's refund practices was not surprising, as it was industry practice at the time for escrow companies, or the third-party servicers like RSI that they outsourced to, not to provide such refunds. (*See* Kelley Decl. ¶ 11; Decl. of Erin Toll in Opposition to ORT's Motion for Summary Judgment ¶ 17-19 [Dkt. No. 86].)

C.     **Old Republic Switched Its Reconveyance Services to PCD**

At the time that Old Republic terminated its contract with RSI for "processing issues," it was in discussions with Troy Kelley's company, The Post Closing Department ("PCD"), as an alternative third-party provider of reconveyance services.

1.     <u>Old Republic Contracted with a Legal Entity, Not With Mr. Kelley Personally</u>

Notably, it was clear to Old Republic from the outset of the conversations with PCD that it was dealing with a business entity, not with Mr. Kelley in his personal or individual capacity. In an initial contact email, Mr. Kelley wrote to Mr. Lago that he was "President of United National, which owns the Post Closing Department." (May 6, 2005 Email from Troy X. Kelley to Carl Lago at 2, Exh. B to Lundsgaard Decl.) PCD's business literature, which Carl Lago testified that he saw before entering into the contract with PCD, explicitly referred to United National as an LLC, or limited liability company. (Lago Depo. 179:20-182:25, attached as Exh. D to Lundsgaard Decl.; Exh. E to Lundsgaard Decl. at page marked ORTK000180.)

Even aside from this affirmative evidence of Old Republic's knowledge, PCD's corporate status was a matter of public record. A simple search of State licensing records would have shown that Post Closing Department and PCD were registered names for United National, LLC, and that United National, LLC, was a registered Washington limited liability company. (*See* Lundsgaard Decl., Exh. E (report from the State of Washington's Master License Service Database), Exh. F (printout from the Secretary of State's website).)

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Thus, when Mr. Kelley signed the contract with Old Republic as "President" of "The Post Closing Department," Old Republic knew he represented a corporate entity, United National, LLC, doing business under the name Post Closing Department.

2. Negotiation of the PCD-Old Republic Contract

After the parties' initial discussions, PCD sent Old Republic a first draft of the contract on or about May, 2006. (*See* Exh. B-2 to Decl. of Carleton Lago in Support of Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 72] ("Lago Decl.").)

In response, Old Republic sent PCD its changes, which PCD accepted. (Lago Decl., Exh. B-4.) Among other changes, Old Republic added the following paragraph to the "Additional Terms and Conditions" section:

> PCD shall provide client with monthly progress reports of reconveyance activity on each of client's files being tracked as well as an accounting on all funds received from client that have been disbursed and/or refunded to principals.

(*See* Lago Decl., Exh. B-4.)

Other than this brief reference to reports on disbursement of funds, Old Republic added no language to the contract regarding the "refunds" it now claims are required by the contract. Old Republic proposed no language governing the limits on what items PCD could use reconveyance fees for, describing the circumstances, if any, under which PCD would or would not be obligated to make refunds to escrow customers, or describing how such refunds would be calculated. Old Republic has admitted, however, that the "proper use of reconveyance fees was important to Old Republic Title prior to executing the PCD Agreement." (Answer to Request for Admission No. 3, Exh. G to Lundsgaard Decl.) Thus, the issue of how the reconveyance fees were to be used was on Old Republic's mind as it redrafted this contract, and it elected not to impose particular limitations on PCD's use of the funds, other than to insist that PCD provide "reports". If Old Republic harbored a secret intention that PCD would handle the reconveyance

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5

No. 2:10-cv-00038-JLR
M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

funds differently from the contract, differently from RSI, and differently from industry practice, it decided not to incorporate that secret intention into the contract.

### 3. Performance of the PCD-Old Republic Contract

The parties' performance was consistent with the language of the contract. As described in more detail in the Kelleys' opposition to Old Republic's motion for partial summary judgment, Old Republic internal emails confirm that it received reports (on at least one document occasion) from PCD indicating how PCD was handling the reconveyances, and Old Republic acquiesced in PCD's practices. (*See* Kelleys' Opposition to Old Republic's Motion for Partial Summary Judgment ("Kelleys' Opposition") [Dkt. No. 84] at 14-15.) There is *no* evidence that Old Republic *ever* complained about PCD's refund practices prior to the litigation.

It is also undisputed that Old Republic did not say anything different to the escrow customers about alleged refunds from PCD; to the contrary, it simply charged them a flat "reconveyance fee" in return for PCD's services. (*See* Kelleys' Opposition at 16 (describing Old Republic's settlement statement practices and its disclosures to customers on their HUD settlement statements).)

PCD ceased doing business with Old Republic roughly in June 2008.

## D. Old Republic Raised Its Refund Theory Only After Having Been Sued

This litigation was triggered not by any dissatisfaction of Old Republic with how PCD was handling reconveyance funds or serving Old Republic's escrow customers ; instead, it was sparked by the class action lawsuit captioned *McFerrin v. Old Republic Title*, No. C08-5309-BHS (W.D. Wash.). At that point, in the course of bringing a third-party action against the Kelleys, Old Republic announced its opportunistic, new theory that in fact PCD should have been providing refunds in the vast majority of cases all along.

The Court may recall that during oral argument on the Kelleys' motion to dismiss issues were raised with respect to what party such refunds would belong to, if any were in fact owing.

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 6

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Old Republic has specifically admitted that these alleged "Excess Funds" belong to the customers, not to Old Republic, and that it intends to return any alleged "Excess Funds" to those customers. (Answer to Request for Admission Nos. 4, 6, Exh. G to Lundsgaard Decl.) It should therefore not be disputed that Old Republic has not been "injured" in the form of allegedly withheld refunds, since those refunds are not – even under Old Republic's theory of this case – owing to Old Republic.

### III. ARGUMENT

**A.     Standard for Summary Judgment**

The summary judgment standards are familiar. Under FRCP 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "The plain language of Rule 56(c) [now Rule 56(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Illinois Tool Works, Inc. v. Seattle Safety, LLC*, 2010 WL 4668447, *4 (W.D. Wash. Nov. 8, 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Factual issues can be resolved on summary judgment if "no reasonable jury" could determine them in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 468, 166 L.Ed.2d 333 (2007); *Ford v. State of Washington*, 2011 WL 643135, *4 (W.D. Wash. Feb. 17, 2011) (factual issue can be resolved "where the record, taken as a whole, could not a lead a rational trier of fact to find for the nonmoving party").

**B.     The Kelleys Are Entitled to Summary Judgment That the Contract Was Between Old Republic and PCD, not Between Old Republic and the Kelleys**

As a threshold matter, it is necessary to clarify who the claims in this case are properly brought against. Aside from the newly pled fraudulent transfer claims (Count 6), the FAC purports to bring all claims against the Kelleys individually. However, the evidence is

KELLEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

No. 2:10-cv-00038-JLR

M41754-1425501_2

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

unequivocal that Old Republic contracted with a *corporate entity*, specifically, United National, LLC, dba the Post Closing Department, not with the Kelleys individually. Therefore, the claims associated with the performance of the contract – breach of contract (Count 1), Consumer Protection (Count 2), and unjust enrichment claims (Count 5) – are not properly against the Kelleys as individuals; instead, they should be brought against PCD if brought at all. Of the original five claims, only the "piercing the corporate veil" and "improper winding up" claims are properly considered claims against the individuals.

The contract here is clearly with the corporate entity PCD. PCD is referred to throughout as the party entering into the contract, agreeing to provide services, to receive funds, etc. The contract states repeatedly that "PCD agrees to," "PCD shall complete," "client agrees to pay PCD," etc. And the signature block is captioned "The Post Closing Department," with Troy Kelley signing as "President." There is absolutely nothing in the writing or anywhere in the record that remotely suggests that Mr. Kelley was executing the document in his personal capacity rather than as a representative of PCD. To the contrary, the contract references only the duties of PCD, and the extrinsic evidence unambiguously demonstrates that Old Republic affirmatively knew that PCD was a tradename for United National, and that United National was an "LLC." Moreover, PCD's legal status was a matter of public record. Old Republic should not be now permitted to disclaim its knowledge and assert, contrary to all available evidence, that it was really contracting with Mr. Kelley personally. Accordingly, the Kelleys are entitled to summary judgment that they are not personally liable on the PCD-Old Republic contract.

**C.    The Kelleys Are Entitled to Summary Judgment on the Breach of Contract Claim**

The Kelleys are also entitled to summary judgment on the breach of contract claim because PCD did not breach the contract.

Old Republic's present theory of how the contract in this case was supposed to operate runs as follows:

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

(1)  Old Republic would collect the reconveyance fees from its customers and forward it to PCD;

(2)  PCD would deduct the $20 "service fee" and hold the remainder "in trust" pending completion of the reconveyance;

(3)  PCD could then use the remainder for payment of recording fees and trustee fees, and for those two limited purposes, so that there were only three possible uses of the funds by PCD ($20 "service fee", recording fees, trustee fees); and,

(4)  After completion of the reconveyance, if any funds were remaining after payment of these amounts, PCD would refund the entire amount in all cases to the escrow customers.

(*See* FAC ¶¶ 19-22.)  Thus Old Republic's theory of breach hinges on two key assertions: (i) there were only three possible uses of the reconveyance funds transmitted to PCD and (ii) PCD was obligated to provide refunds to the escrow customers for any moneys beyond those three uses of the funds.

The problem for Old Republic's theory of the contract is that *neither* of those two essential conditions for Old Republic's theory are contained anywhere in the contract.  There is absolutely *nothing* in the document that purports to limit PCD's uses of the funds strictly to the $20 service fee, recording fees, and trustee fees.

Even more important, there is nothing in the contract that obligates PCD to provide the refunds that Old Republic now asserts are owing.  At most, there is a brief reference in the "Additional Terms and Conditions" section that PCD would provide an accounting of all funds, including any refunds.  The fact that the contract required PCD to *report* regarding its use of the funds, including disbursements, refunds, etc., is not equivalent to a requirement that PCD be

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 9

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

required to provide refunds, much less refunds on the strict and detailed terms now asserted by Old Republic.[2]

It is undisputed that Old Republic drafted this contract language and that it was added to the contract at its behest.  (*See* Section II(C)(2), *supra*.)  Old Republic therefore had every opportunity to add language along the lines it now suggests it really intended, but it did not do so.  It should not be now permitted to rewrite the contract to add terms that it did not add when it had the chance.

Moreover, as described in more detail in the Kelleys' opposition to Old Republic's motion for partial summary judgment, Old Republic's interpretation is contrary to the language of the written contract, the course of negotiations, industry practices, and the parties' subsequent conduct under the contract.  (*See* Kelleys' Opposition at 6-16.)

In its reply in support of its motion for partial summary judgment, Old Republic ridicules the Kelleys' argument as variations on "the written contract did not say he couldn't keep extra fees," (Plaintiffs' Reply in Support of Motion for Partial Summary Judgment [Dkt. No. 88] at 1), as if it is unusual or extraordinary for contracts to omit detailed, written discussions of fees.  There is nothing at all unusual about such contracts; to the contrary, they are very common.

For example, medical patients are not given detailed, written fee schedules every time they visit the doctor, which does not excuse their obligation to pay for the services they receive.  (The fact that insurance might pay some or all of the fee does not change the fact, and of course many patients do not have insurance.)  Even in the legal context, while RPC 1.5(b) indicates that the basis for the fees and expenses to be charged by a lawyer shall be communicated to the client, it only requires that this communication is "preferably" in writing, recognizing that in some cases the fees and expenses may not be set forth in writing.  In an ideal world, perhaps all

---

[2] As Troy Kelley has explained, refunds could be necessary because the money was mistakenly transmitted to PCD or if PCD was informed, before it began its work, that the reconveyance had already been completed.  (Kelley Decl. ¶ 23.)

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

fees and services would be carefully specified in writing in advance in every contract, but contracts are executed and performed in the real world, not a perfect one.

In sum, the contract here imposes no contractual obligation on PCD to issue refunds to Old Republic's escrow customers, nor, in particular, refunds on the terms now described by Old Republic. Because Old Republic's breach of contract theory turns on the existence of such an obligation, it should be dismissed.

### D. The Kelleys Are Entitled to Summary Judgment on the CPA Claim

Count 2 of the FAC seeks recovery against the Kelleys for alleged "unfair or deceptive acts or practices" in violation of RCW 19.86.020. (FAC ¶¶ 43-46.) As discussed above, the contracting party here was PCD, so this claim brought directly against the Kelleys as individuals should be dismissed for that reason alone. However, the CPA claim should also be dismissed because there is no evidence that PCD (or the Kelleys for that matter) engaged in a violation of the statute.

A RCW 19.86.020 claim has five essential elements:

(1) an unfair or deceptive act or practice;

(2) occurring in trade or commerce;

(3) public interest impact;

(4) injury to plaintiff in his business or property; and,

(5) causation.

*Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). "All elements must be present; a finding that any element is missing is fatal to the claim." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 743 (1997), *rev. denied*, 133 Wn.2d 1033 (1998).

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 11

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

With respect to the first prong of the test ("unfair or deceptive acts or practices"), "[o]nly acts that have the capacity to deceive *a substantial portion* of the public are actionable." *Id.* at 744 (emphasis in original).

Here, Old Republic has no evidence that PCD or the Kelleys engaged in an unfair or deceptive act or practice or that it caused Old Republic any injury in its business or property. As described above, PCD did not breach its contract with Old Republic because "refunds" were not required. Moreover, even if "refunds" to the escrow customers were required, that is not injury to *Old Republic* in its business or property; at most, it was injury to Old Republic's escrow customers.

Although that is sufficient to shift the burden to Old Republic to set forth evidence to support these essential elements of its CPA claim, the Kelleys will attempt to address affirmatively the CPA theories set forth in the FAC, oblique as it is regarding these issues. (*See* FAC ¶¶ 43-46 (stating Old Republic's CPA claim in conclusory terms by reference to unspecified earlier paragraphs).)

1. The Legal Entity Claim

Paragraph 11 of the FAC alleges that "Kelley represented to Old Republic Title that 'The Post Closing Department' was a legal entity doing business in Washington," and ¶ 14 alleges that "'The Post Closing Department' never a Washington corporation."

As described above, however, the assertion that PCD was a legal entity doing business in Washington was *true*. PCD was a registered name for United National, LLC, a Washington limited liability company, a circumstance that was disclosed to Old Republic at the outset and that Old Republic could have confirmed with the State of Washington with minimal effort. These alleged statements about the corporate status of PCD therefore could not be an "unfair or deceptive act or practice" in violation of RCW 19.86.020, nor could they have caused Old Republic any harm.

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 12

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

### 2. The Refund Claim

Alternatively, ¶ 12 of the FAC alleges that Kelley promised to make the refunds that Old Republic now says should have been made under the PCD-Old Republic contract. For the reasons described above, PCD did not breach its obligations under the PCD-Old Republic contract, and therefore its conduct cannot have been an "unfair or deceptive act or practice."

However, there are two additional reasons why this claim should be dismissed.

*First*, there can be no showing that PCD's conduct had "the capacity to deceive a substantial portion of the public." The only members of the public involved in this case are Old Republic's escrow customers. PCD could not have deceived them, since PCD was not dealing with them. There is no evidence that PCD communicated with the escrow customers, or that any documents prepared by PCD were distributed to them. There simply was no communication in which PCD could have deceived the escrow customers. Moreover, the evidence is that the escrow customers were being *truthfully* told what their reconveyance fees were, and were not being told to expect a refund. (*See* Kelleys' Opposition at 16.) Thus, even Old Republic's conduct does not appear to have been deceptive as to the escrow customers.

*Second*, Old Republic has not been *caused injury* by any failure to provide refunds, because, even under its theory of the case, those refunds belong to the escrow customers, not to Old Republic. (*See* Answers to Requests for Admission cited above.)

### E. The Kelleys Are Entitled to Summary Judgment on the Unjust Enrichment Claim

Count 5 of the FAC seeks recovery against the Kelleys for "unjust enrichment," specifically, "benefits in the form of unused reconveyance fees that Kelley did not refund as he was obligated." (FAC ¶ 59.) Summary judgment is appropriate on this claim for four reasons: (a) procedurally, as described above, this claim is properly made only against PCD if at all; (b) as this Court has repeatedly held in other cases, unjust enrichment (or "quasi-contract") is not an appropriate claim in the presence of an express contract; (c) to the extent that any claim for

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 13

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

unjust enrichment exists, it would belong to Old Republic's escrow customers, not to Old Republic; and (d) even as to those customers, PCD's retention of any benefits was not "unjust" because PCD provided the services those customers expected.

The Kelleys discussed the first point above in Section III(B) above in connection with the question of the proper parties, and will only separately discuss the last three here.

### 1. Existence of an express contract bars a claim for unjust enrichment

Although the terms of the PCD-Old Republic contract are in dispute, there is no dispute that there *was* an express contract between them. This Court has repeatedly held, based on long-standing Washington case law, that there is no claim for unjust enrichment when there is an express contract.

"Unjust enrichment is an equitable, quasi-contractual remedy, inapplicable to a written contract." *Cornelius v. Fidelity Nat'l Title Co.*, 2009 WL 596585, *10 (W.D. Wash. March 9, 2009). "'[W]here the rights of the parties are governed by an express and enforcible contract, the law will not imply another or different contract . . . .'" *Univera, Inc. v. Terhune*, 2010 WL 3489932, *4 (W.D. Wash. Aug. 31, 2010) (quoting *Chandler v. Wash. Toll Bridge Authority*, 17 Wn.2d 591, 608 (1943)). Thus, in *Cornelius*, Judge Pechman dismissed an unjust enrichment claim between Fidelity National Title and a class of its escrow customers because there were express escrow contracts. 2009 WL 596585, *10. In *Univera*, likewise, Judge Leighton dismissed an unjust enrichment claim between a manufacturer and certain distributors between there were express contracts between the manufacturer and the distributors. 2010 WL 3489932, **4-5; *see also Guketlov v. Homekey Mortgage, LLC*, 2009 WL 3785575, *5 (W.D. Wash. Nov. 9, 2009) (borrowers' "express contract with [mortgage company] bars them from bringing an unjust enrichment claim relating to the loan contract"). Here, similarly, the existence of an express contract between PCD and Old Republic bars any claim for unjust enrichment.

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

### 2. Any "enrichment" of PCD was not at Old Republic's "expense"

Even aside from this fundamental point, Old Republic has no unjust enrichment claim on these funds. For an unjust enrichment claim to exist, it is not enough that the defendant receive a benefit; in addition, the defendant must receive the benefit "*at the plaintiff's expense*." *Klinger v. Wells Fargo Bank*, 2010 WL 5138478, *6 (W.D. Wash. Dec. 9, 2010) (emphasis added). Here, however, even under Old Republic's theory of this case, PCD's alleged "unjust enrichment" was at the expense of the escrow customers, not at the expense of Old Republic. As noted above, Old Republic has repeatedly confirmed its view that the alleged refunds belong to its customers, not to itself. Thus, PCD did not retain a "benefit" at Old Republic's "expense," and its claim should be dismissed.

### 3. PCD was not unjustly enriched because it provided the reconveyance services needed by the escrow customers

Finally, even if Old Republic were somehow allowed to assert these claims on behalf of the escrow customers, PCD's retention of these payments is not "unjust" as to those customers. As described in the Kelleys' Opposition (page 16), the "reconveyance fee" to be transmitted to PCD was fully disclosed to Old Republic's escrow customers, with no indication that the fee was contingent or refundable. In return, PCD provided exactly the service requested, and there is no evidence that PCD ever failed to complete any reconveyance for any of Old Republic's escrow customers. In other words, the escrow customers were charged a fee for a post-closing service, and they received the service they needed. There can be no claim for "unjust enrichment" for the service provider retaining that fee, even if some third party such as Old Republic subsequently decides that the fee was too high.

## F. The Kelleys Are Entitled to Summary Judgment on the Piercing Claim

The general rule of course is that corporate entities are entitled to respect for their separate legal existence, and that liability can be imposed on shareholders of those entities only in "exceptional situations." *Harrison v. Puga*, 4 Wn. App. 52, 62-63 (1971). The "piercing the

KELLEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

corporate veil" doctrines developed to govern personal liability of shareholders in the context of regular corporations applies to members of limited liability companies as well. RCW 25.15.060.

> Disregarding corporate form to assess liability against the shareholders requires proof of two elements: (1) the corporate form has been intentionally used to violate or evade a duty owed to another, and (2) disregard is necessary and required to prevent unjustified loss to the injured party.

*Gall Landau Young Construction Co., Inc. v. Hedreen*, 63 Wn. App. 91, 100 (1991).

With regard to the first element, "the court must find an abuse of the corporate form." *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 410 (1982). However, the fraud required by a piercing claim is not merely alleged general fraud that injured a plaintiff, but *fraud in the corporate form* itself. "Generally, a party must show that the corporation manipulated the entities in order to avoid the legal duty." *Minton v. Ralston Purina Co.*, 146 Wn.2d 385, 398 (2002).

Here, there is no evidence that the corporate entity was manipulated, or that Old Republic was deceived regarding the nature of the entity it was dealing with to its detriment. To the contrary, the evidence is unequivocal that Old Republic knew it was dealing with a corporate entity (or certainly should have known given the easily available corporate records). This dooms Old Republic's "piercing" claim.

Old Republic's real issue is not that it was deceived about the corporate nature of PCD; rather, the real reason it seeks to pierce the corporate veil is that it believes it cannot recover sufficiently against PCD. However, it is well established that a corporation's inability to pay an alleged debt is not a basis for disregarding its corporate form. As the Supreme Court held in *Meisel*, "Separate corporate entities should not be disregarded solely because one cannot meet its obligations." 97 Wn.2d at 411; *see also Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc.*, 61 Wn. App. 395, 399-400 (1991) ("the separate existence of a corporation should not be disregarded solely because its assets are not sufficient to discharge its obligations"). Courts routinely dismiss "piercing" claims where, as here, there is no evidence of abuse of corporate

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 16

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

form, and the only basis for "piercing" is the plaintiff's disappointment that the corporation has insufficient assets to repay its obligations. *See Minton*, 146 Wn.2d at 399 (corporate disregard claim dismissed because no evidence that the corporate identity was being used to perpetrate a fraud); *Gall Landau*, 63 Wn. App. at 101-102 (corporate disregard claim dismissed because no evidence of manipulation of corporate form); *Norhawk Investments*, 61 Wn. App. at 399-401 (same). The same result should obtain here.

In other motion practice, Old Republic has pointed to a handful of occasions when PCD's funds were allegedly commingled with those of the Kelleys or personal expenses were charged to the corporation. This does not support a piercing claim. "With regard to the second factor, the wrongful corporate activities *must actually harm the party seeking relief* so that disregard is necessary. Intentional misconduct must be the cause of the harm that is avoided by disregard." *Meisel*, 97 Wn.2d at 410. Even if the Kelleys did occasionally charge the wrong account for cleaning services or personal expenses, Old Republic cannot show that such "wrongful" expense accounting caused Old Republic any harm.

**G.  The Fraudulent Transfer and "Improper Winding Up" Claims Should Be Dismissed**

Finally, because all of Old Republic's underlying substantive claim – whether against the Kelleys individually or against PCD – should be dismissed, the fraudulent transfer and "improper winding up" claims should be dismissed as well. Those claims serve no legitimate purpose if there is no substantive claim for breach of contract, CPA, or unjust enrichment.

## IV.   CONCLUSION

In sum, this motion should be granted and all of Old Republic's claims should be dismissed. Old Republic wants this Court to rewrite the parties' contract to include requirements that Old Republic failed to include when it was drafted, and it wants the Court to impose a personal guarantee on the Kelleys that Old Republic failed to obtain when it had the chance. The

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 17

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Court should decline the invitation to retroactively rewrite the parties' relationship in that fashion.

DATED this 9th day of March, 2011.

GRAHAM & DUNN PC

By /s/ Judith A. Endejan
 Judith A. Endejan
 WSBA# 11016
 Email: jendejan@grahamdunn.com
 David C. Lundsgaard
 WSBA# 25448
 Email: dlundsgaard@grahamdunn.com

Attorneys for Defendants Troy X. and Diane Duffrin Kelley

KELLEY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 18

No. 2:10-cv-00038-JLR

M41754-1425501_2

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

# CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2011, I electronically filed the foregoing Kelley Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| Scott A. Smith, WSBA #11975<br>Gavin W. Skok, WSBA #29766<br>William P. Brewer, WSBA #37055<br>Riddell Williams P.S.<br>1001 Fourth Avenue, Suite 4500<br>Seattle, WA 98154-1192<br>Tel:  206.624.3600<br>Fax: 206.389.1708 | ☐ U.S. Mail, Postage Prepaid<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Facsimile Transmission<br>☐ Email – ssmith@riddellwilliams.com;<br>gskok@riddellwilliams.com;<br>wbrewer@riddellwilliams.com<br>☒ Electronically served via Court's website |
|---|---|

Dated this 9th day of March, 2011.

           s/*Darlyne De Mars*
           Legal Assistant to Judith A. Endejan and
           David C. Lundsgaard
           GRAHAM & DUNN PC
           Pier 70 ~ 2801 Alaskan Way, Ste. 300
           Seattle, WA  98121-1128
           Tel:  (206) 624-8300
           Fax:  (206) 340-9599
           Email: ddemars@grahamdunn.com

KELLEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19

No. 2:10-cv-00038-JLR

M41754-1425501_2

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599